UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PROVIDENCE HEALTH AND SERVICES, a Washington non-profit corporation; and SWEDISH HEALTH SERVICES, a Washington non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SYNDICATE 2623/623 (BEAZLEY); and FEDERAL INSURANCE COMPANY,<br><br>Defendants. | Case No. C18-495 RSM<br><br>ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on Motions for Summary Judgment filed by the three parties. Dkts. #36, #37, and #40. This is an insurance-coverage dispute arising from an $18 million arbitration award for the wrongful termination of Dr. David Newell, a neurosurgeon working for Plaintiffs Swedish Health Services and Providence Health Services (collectively "Providence").

Defendant Certain Underwriters at Lloyd's London ("Underwriters" or "Beazley") "requests a declaration that the Beazley Policy affords no coverage in connection with the underlying Newell Claim because it was not reported to Beazley during the requisite reporting

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 1

period." Dkt. #36 at 2. Providence requests the Court rule that Washington law governs this action, and that Defendants can only avoid coverage if they show actual and substantial prejudice from Providence's delay in reporting. Dkt. #37 at 2–3. Defendant Federal Insurance Company hopes to rely on the untimeliness of Providence's reporting under the Beazley Policy to support their denial of coverage as well. Dkt. #40 at 2. For the reasons stated below, the Court GRANTS Providence's Motion and DENIES the Motions of Defendants.

## I. BACKGROUND

Ruling on the limited issues raised by the parties' Motions does not require a full recitation of the facts, and indeed discovery in this case is ongoing. The following facts of this case are generally agreed to by the Parties.

Plaintiff Providence Health and Services ("Providence") is a Washington non-profit corporation headquartered in Renton. Dkt. #38 ("Bhatia Decl."), ¶ 3. It operates hospitals and other clinics in Washington, Alaska, California, Montana, and Oregon. *Id*. Plaintiff Swedish Health Services is also a Washington non-profit corporation. *Id*. ¶ 5. Swedish is a subsidiary of Western HealthConnect, which is an affiliate of Providence. *Id*. Swedish operates hospitals and clinics in Western Washington. Swedish is an insured under Providence's insurance policies.

Providence is covered by a Beazley One Management Liability Insurance Policy for Healthcare Organizations for the November 1, 2015, to July 1, 2022, Policy Period. Bhatia Decl., Ex. A at 8, 124. The Beazley Policy provides a coverage limit of $10 million for each Employment Practices claim, which coverage attaches atop a self-insured retention of $1 million. *Id*. at 9. This policy is a "Claims Made and Reported Policy," requiring reporting of claims in writing to Beazley "as soon as practicable but in no event later than the end of the

policy period…" *Id.* at 8. However, under an endorsement, the requirement was added that the claim had to be reported to Beazley no later than 60 days after an Executive Officer of the Insured Organization becomes aware of the claim. *Id.* at 26. The Policy also includes a New York choice of law provision. *Id.* at 12.

Providence is also covered under a Directors and Officers Excess Liability policy issued by Defendant Federal ("Federal Policy"). Bhatia Decl., Ex. B at 141, 161. This policy provides a $10 million liability limit in excess of the Beazley Policy. *Id.* at 141. The Federal Policy "follows form" to the Beazley Policy, meaning it incorporates the terms of the latter policy "except as otherwise provided" in the Federal Policy's own terms. *See id.* at 157. The Federal Policy says this about notice:

> The **Insureds** shall give to the Company written notice as soon as practicable of the cancellation of any **Underlying Insurance**, any notice given under any **Underlying Insurance** and additional or return premiums charged or paid in connection with any **Underlying Insurance**.

*Id.* at 158 (emphasis in original).

By letter dated August 28, 2017, Providence notified Beazley and Federal that an arbitration award in excess of $17 million had been entered against them in a binding arbitration initiated by Dr. David Newell, a neurosurgeon formerly employed with the Swedish Neurological Institute.[1] Bhatia Decl., Ex. H. The letter stated that Dr. Newell's counsel had initially demanded arbitration on February 22, 2017, and that the Hearing took place from July 31 through August 4, 2017. *Id.* This was the first notification Beazley received concerning the underlying Newell Claim.

---

[1] Providence states that, including attorney fees, the total amount of the award is now $18,185,178.84, and that a judgment obtained on this award has been appealed. Dkt. #37 at 6.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 3

Providence acknowledges that it failed to report the claim within 60 days after becoming aware of the claim, as required under the Beazley Policy. *See* Dkt. #37 at 2.

Providence's defense counsel in the Newell arbitration was Jeff James, a senior partner with the firm Sebris Busto James. Mr. James and his firm are "panel counsel" under the Beazley Policy; that is, Beazley pre-approved the firm to handle employment claims brought against Providence. Bhatia Decl., Ex. A at 105. Mr. James and his colleagues, along with Providence's in-house counsel, investigated the claims, took discovery, and otherwise prepared the case for arbitration. Bhatia Decl., ¶ 8.

On February 23, 2018, Beazley issued a letter denying coverage for the Newell claim. Bhatia Decl., Ex. F. The primary stated reason for declining coverage was that "Providence and Swedish did not promptly notify" Beazley of Dr. Newell's claim. *Id*. at 191. Beazley specifically relied on the notice-of-claim provisions, including the condition to report a claim within 60 days after an Executive Officer becomes aware of the claim and the requirement for semi-annual reporting of claims, known as bordereau reporting. *Id*. at 198-99.

Federal acknowledged notice of the claim on September 22, 2017. Bhatia Decl., Ex. G. Providence alleges that Federal never issued a substantive coverage determination letter. Dkt. #1-2 at 6. Instead, it relied only on the fact that the Beazley Policy was not exhausted to assert it had no current obligation to act. *Id*. In response to Providence filing this action, Federal answered and asserted affirmative defenses, claiming that Providence should not be granted relief. Dkt. #27. Federal's answer effectively denies coverage for this claim.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Under Washington law, interpretation of an insurance contract is a question of law. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002).

### B. The New York Choice-of-Law Provision

As an initial matter, Providence argues that the New York choice of law provision in the Beazley Policy is void under RCW 48.18.200. Dkt. #37 at 10–11. This statute states: "[n]o insurance contract delivered or issued for delivery in this state… shall contain any condition,

stipulation, or agreement requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country…. Any such condition, stipulation, or agreement in violation of this section shall be void…" RCW 48.18.200.

Beazley argues that "[w]hen parties dispute choice of law… there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis." Dkt. #42 at 9 (citing *Erwin v. Cotter Health Ctrs., Inc.*, 161 Wn.2d 676, 692 (2007); *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1161 (9th Cir. 2012)). Beazley maintains "there is no meaningful conflict between applicable New York law and Washington law on the threshold coverage issue underlying this cross-motion." *Id*.

Defendant Federal does not address this issue in its Response. *See* Dkt. #45.

On Reply, Providence points out that "[n]either of the insurers even attempts to rebut that RCW 48.18.200 nullifies the New York choice-of-law provision in the Beazley Policy…" Dkt. #47 at 3. Providence argues that "[t]he insurers ignore the stark distinction between the law of Washington and that of New York concerning the effect of a delay in notifying the insurer of a claim under any type of policy, whether occurrence-based or claims-made-and-reported." *Id*.

The Court agrees with Providence and finds that, under RCW 48.18.200, the New York choice of law provision is void. Washington law applies to this case.

**C. Application of the Notice-Prejudice Rule to this Case**

Defendant Beazley argues the Newell claim is not covered because it was not reported within 60 days, in violation of the plain terms of the policy. Dkt. #36 at 9. Beazley

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 6

acknowledges that the "notice-prejudice" rule in Washington permits insureds to pursue late claims so long as the insurer cannot show actual prejudice from the delay. *Id.* at 10 (citing *Safeco Title Ins. v. Gannon,* 54 Wn. App. 330, 337 (1989)).[2] Beazley asserts that "whether prejudice is a factor in late reporting depends on whether the insurance policy is an occurrence-based policy or a claims-made-and-reported policy," and that "Washington applies the notice-prejudice rule to reporting requirements of occurrence-based policies and the no-prejudice rule to the reporting requirements of claims-made-and-reported policies." Dkt. #36 at 10. To support this position, Beazley cites to, *inter alia*: *Gannon,* 54 Wn. App. at 337-38 ("Claims-made or discovery policies are essentially reporting policies"); *Great American Ins. Co. v. Sea Shepherd Conservation Society*, No. C13-1017RSM, 2014 U.S. Dist. LEXIS 71462, at *15 (W.D. Wash. 2014) ("an insurer that issues a claims-made policy under Washington law … does not need to show prejudice in order to deny coverage for an untimely reported claim"); and *Moody v. American Guar. and Liability Ins. Co.*, 804 F. Supp. 2d 1123, 1125 (W.D. Wash. 2011) ("the notice/prejudice rule does not apply to 'claims made' policies."). *Id.* at 10–11.

Providence distinguishes all the cases cited by Beazley. Those cases involved insureds reporting outside the policy period; here Providence reported after 60 days but within the policy period. Providence asserts that "[h]ere, unlike in *Gannon*, it is undisputed that Providence provided notice during the Beazley's policy period and therefore satisfied the insuring agreement" and thus "the issue before this Court is different than in *Gannon*." Dkt. #37 at 18. Plaintiffs also argue that *Sea Shepherd* and *Moody* are inapposite because the insured reported after the policy period in both of those cases. Dkt. #43 at 15.

---

[2] "The notice/prejudice rule requires carriers, in order to exclude coverage because of an insured's failure to comply with a policy's notice requirement, to show actual prejudice resulting from the lack of notice." *Gannon*, 54 Wn. App. at 336 (citing *Oregon Auto Ins. Co. v. Salzberg*, 85 Wn.2d 372, 377, 535 P.2d 816 (1975)).

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 7

Defendant Federal makes many of the same arguments as Beazley, citing to *Sea Shepherd* and *Moody*. *See* Dkt. #40 at 9–10.

Providence agrees with Defendants that an insured's notice after the reporting period of a claims-made-and-reported policy would preclude application of the notice-prejudice rule under Washington law, but disagrees about what constitutes the "reporting period." Dkt. #47 at 4. Providence argues that the reporting period is the policy period, plus any applicable extension, not 60 days after notice of the underlying claim. *Id*. Providence argues that the policy period is integral to the nature of claims-made-and-reported policies, whereas the 60-day notice provision is a mere procedural condition. *Id*. (citing to *Gannon*, 54 Wn. App. at 339). Providence makes clear that no Washington court has considered the exact question here—whether to apply the notice-prejudice rule where a claim is made under a claims-made-and-reported policy within the reporting period but contrary to a 60-day notice provision. Providence contends that Washington courts would apply the notice-prejudice rule here given rulings on related issues in other cases not directly on point. *Id*. at 8–9.

Beazley attempts to distinguish all the cases cited by Providence, and argues that Providence is inviting the Court to re-write the insurance contract contrary to the "well settled rule" against such practice. Dkt. #46 at 6 (citing *Progressive Casualty Ins. Co. v. Jester*, 102 Wn.2d 78, 79 (1984)).

*Gannon*, cited by both parties, discusses the difference between occurrence policies and claims-made-and-reported policies thusly:

> Notice within an occurrence policy is not the critical and distinguishing feature of that policy type. Occurrence policies are built around an insurer who is liable for the insured's malpractice, no matter when discovered, so long as the malpractice occurred within the time confines of the policy period. Coverage depends on when the negligent act or omission occurred and not when the

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 8

> claim was asserted. The occurrence insurer, then, is faced with a "tail" that extends beyond the policy period itself. This "tail" is the lapse of time between the date of the error (within the policy period) and the time when a claim is made against the insured. The giving of notice is only a condition of the policy, and in no manner is it an extension of coverage itself. It does not matter when the insurer is notified of the claim by the insured, so long as the notification is within a reasonable time and so long as the negligent act or omission occurred within the policy period itself.
>
> Claims-made policies, likewise, require that notification to the insurer be within a reasonable time. Critically, however, claims-made policies require that that notice be given during the policy period itself. When an insured becomes aware of any event that could result in liability, then it must give notice to the insurer, and that notice must be given "within a reasonable time" or "as soon as practicable" -- at all times, however, during the policy period.
>
> With claims-made policies, the very act of giving an extension of reporting time after the expiration of the policy period, . . . [would negate] the inherent difference between the two contract types. Coverage depends on the claim being made and reported to the insurer during the policy period. Claims-made or discovery policies are essentially reporting policies. If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches. If a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an extension of coverage to the insured gratis, something for which the insurer has not bargained. This extension of coverage, by the court, so very different from a mere condition of the policy, in effect rewrites the contract between the two parties. This we cannot and will not do.

*Gannon*, 54 Wn. App. at 337-38 (quoting *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So. 2d 512, 515-16, 37 A.L.R.4th 374 (Fla. 1983)).

Given the discussion in *Gannon*, above, and the other Washington cases cited by the parties, the Court concludes that Washington law permits the application of the notice-prejudice rule where a claim is made under a claims-made-and-reported policy within the reporting period, even if the claim is made contrary to a 60-day notice provision. To conclude otherwise

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 9

would be to ignore the purpose of the notice-prejudice rule and the inherent distinction between occurrence policies and claims-made-and-reported policies. This does not amount to "an extension of coverage to the insured gratis" in this case, as the insured and insurers bargained for coverage for the reporting period—the policy period plus an extension of 60 days. Providence's violation of the 60-day notice provision is more akin to the violations contemplated in those Washington cases cited by the parties involving occurrence-based policies, and the purposes behind the notice-prejudice rule apply.

Accordingly, Defendants in this case must show prejudice. Whether or not Defendants were prejudiced is not currently before the Court, and it remains to be seen what evidence could be presented. This issue may be resolved by a subsequent dispositive motion or at trial.

**D. Remaining Issues Raised by Defendants**

Federal asserts that the 60-day notice provision of the Beazley Policy should apply to it as well. However, Providence argues that the plain language of the Federal Policy states that it deviates from the terms of the Beazley policy as "otherwise provided," and the Federal Policy provides that notice is required as soon as practicable after any notice given under the underlying insurance. *See* Dkt. #47 at 11. Providence argues that its interpretation of the Federal Policy is a reasonable one, and therefore must prevail over Defendants' interpretation of the policy. *Id*. at 12 (citing *Am. Star. Ins. Co. v. Grice*, 121 Wn.2d 869, 874-75, 854 P.2d 622 (1993)). The Court agrees with Providence and finds that it complied with Federal's notice-of-claim provision by giving notice concurrently to Beazley and Federal on August 28, 2017. Given all of the above, Federal's Motion for Summary Judgment will be denied.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 10

The Court finds that it need not strike the declaration of Richard D'Amato, as requested by Defendants, as it was unnecessary for the Court to rely on that expert's testimony in reaching the conclusions above.

### III. CONCLUSION

Having reviewed the relevant briefing, attached declarations, and the remainder of the record, the Court hereby finds and ORDERS:

1) Plaintiffs' Motion for Partial Summary Judgment (Dkt. #37) is GRANTED as set forth above.

2) Defendants Motions for Summary Judgment (Dkts. #36 and #40) are DENIED.

DATED this 16th day of January 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE