UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PROVIDENCE HEALTH AND SERVICES, a Washington non-profit corporation; and SWEDISH HEALTH SERVICES, a Washington non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SYNDICATE 2623/623 (BEAZLEY); and FEDERAL INSURANCE COMPANY,<br><br>Defendants. | Case No. C18-495RSM<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I. INTRODUCTION

This is an insurance-coverage dispute arising from an $18 million arbitration award for the wrongful termination of Dr. David Newell, a neurosurgeon working for Plaintiffs Swedish Health Services and Providence Health Services. The arbitrator found that Plaintiffs violated the Washington Law Against Discrimination ("WLAD") and breached an employment contract with Dr. Newell. Defendant insurers denied coverage, leading to this action.

Plaintiffs now moves for Partial Summary Judgment on one or more of Defendants' affirmative defenses. Dkt. #84. Plaintiffs ask the Court to rule: "(1) the breach of contract

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

exclusion [in the insurance policies] does not preclude coverage for any portion of the arbitration award; or (2) even if Dr. Newell's pure contractual claims are excluded by the Policies, the Insurers cannot allocate any portion of the award to such claims because Providence's entire liability can be attributed to his claim for retaliation in violation of the WLAD." *Id*. at 3. For the reasons stated below, the Court GRANTS Plaintiffs' Motion.

## II. BACKGROUND[1]

Plaintiff Providence Health and Services is a Washington non-profit corporation headquartered in Renton. Dkt. #38, ¶ 3. It operates hospitals and other clinics in Washington, Alaska, California, Montana, and Oregon. *Id*. Plaintiff Swedish Health Services is also a Washington non-profit corporation. *Id*. at ¶ 5. Swedish is a subsidiary of Western HealthConnect, which is an affiliate of Providence. *Id*. Swedish operates hospitals and clinics in Western Washington. Swedish is an insured under Providence's insurance policies. *See* Dkt. #38-1 at 67 and 78 (defining Insureds to include Insured Organization and defining Insured Organization to include Subsidiaries).

### A. Facts of Underlying Claim

Dr. David Newell is a neurosurgeon and co-founder of the Swedish Neuroscience Institute ("SNI"). The terms of his employment were established in a "Physician Employment Agreement" ("Agreement"). Dkt. #85 ("Bhatia Decl."), ¶ 2. The Agreement commenced on June 1, 2012, ran for one year, and automatically renewed for successive one-year terms, unless one party or the other terminated the Agreement according to its terms. *Id*.

The Agreement required Dr. Newell to immediately report if he became the subject of "any criminal investigation." *Id*. The Agreement allowed Swedish to terminate his

---

[1] Ruling on these limited issues does not require a full recitation of the facts. The following facts are generally agreed to by the Parties.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

employment upon written notice and without opportunity to cure if Dr. Newell breached that obligation. *Id*. Either party could also terminate the Agreement "without cause upon 180 days prior written notice." *Id*.

In August of 2015 Dr. Newell reported to Plaintiffs that he was being discriminated against on the basis of age. *See* Dkt #38-4 (Dr. Newell's demand for arbitration); Dkt. #39-1 Ex. C; Dkt. #39-1 Ex. J; Dkt #84 at 4. Swedish launched an internal investigation. Dkt. #39-1 at 110. In July of 2016, while that investigation was ongoing, Dr. Newell was arrested and charged with a single count of "sexual exploitation or patronizing a prostitute" in violation of Seattle Municipal Code section 12A.10.040. Dkt. #84 at 5; Dkt #39-1 at 111. Despite Dr. Newell's contractual obligation to report such criminal investigations to Swedish, he did not do so. Instead, Swedish learned of the arrest several months later from a State Medical Quality Assurance Commission letter. *Id*.

On September 20, 2016, Swedish terminated Dr. Newell's employment on grounds that his failure to report the arrest and the ensuing criminal investigation was a breach of his employment contract. *Id*. at 112.

On February 21, 2017, Dr. Newell invoked the arbitration clause in his employment agreement. He asserted nine causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) wrongful termination in violation of public policy; (4) tortious interference with contract and business expectancy; (5) violation of the Washington Consumer Protection Act; (6) discrimination in violation WLAD and the Age Discrimination in Employment Act ("ADEA"); (7) retaliation in violation of the WLAD, ADEA, and Title VII of the federal Civil Rights Act; (8) violation of the Washington Privacy Act; and (9) invasion of privacy. Dkt #38-4 at 7–11.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

On August 18, 2017, Judge Paris Kallas rendered her initial arbitration award, stating:

> Having reviewed the evidence, testimony presented at the hearing, and counsels' argument, I find in favor of Claimant on the following causes of action: breach of contract; breach of implied covenant of good faith and fair dealing; and retaliation in violation of WLAD. Accordingly, I issue the following award in favor of the Claimant and against Respondents, jointly and severally:
>
>     1. Lost Earnings: $16,500,000
>
>     2. Emotional Distress: $1,000,000
>
>     3. Reasonable attorneys' fees, costs, and expenses (WLAD Claims), in an amount to be determined based on submissions of the parties. The parties are directed to meet and confer to establish a briefing schedule.
>
> Respondents are directed to pay the damages identified herein within 30 calendar days of this award.

Dkt. #39-1 at 79. A supplemental award was later issued covering Dr. Newell's attorneys' fees, costs, and expenses.

Plaintiffs unsuccessfully challenged the result, including an appeal to the Washington Court of Appeals. *See Newell v. Providence Health & Servs.*, 2019 Wash. App. LEXIS 1647 (June 24, 2019). Plaintiffs paid the judgment, and the underlying matter is now concluded.

**B. Policy Language**

The first Policy at issue is Beazley One Management Liability Insurance Policy for Healthcare Organizations No. W14646150301. Dkt. #39-1 at 2. The Beazley Policy covers loss resulting from a claim for a "Wrongful Act," defined to mean: "Inappropriate Employment Conduct, Discrimination, Harassment and/or Retaliation by any of the Insureds against an Insured Person …." *Id*. at 46. "Inappropriate Employment Conduct," is defined to include, *inter alia*: "actual or constructive termination of an employment relationship in a manner which is

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

alleged to have been against the law or wrongful," and "actual or alleged breach of any oral, written or implied employment contract or contractual obligation". *Id.* at 44 and 21.

"Retaliation" is defined to mean: "any actual or alleged Discrimination, Harassment, and/or Inappropriate Employment Conduct against an Employee on account of such Employee's exercise or attempted exercise of rights protected by law, refusal to violate any law, disclosure or threat to disclose to a superior or to any governmental agency alleged violations of the law, or on account of the Employee having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law." *Id*. at 45.

So far, breach of an employment contract appears to be covered by this Policy. However, a subsequent exclusion states: "The Underwriters shall not be liable to make any payment for Loss in connection with or resulting from any Claim…. for breach of an express written employment agreement, or under any policy or procedure providing for payment in the event of separation from employment unless such liability would have attached in the absence of such contract or agreement; provided that this Exclusion shall not apply to Defense Costs incurred in connection with such Claim… *Id*. at 47.

This Policy also has a section on allocation stating in part:

> If both Loss covered by this Policy, and non-covered loss are incurred, either because the Claim made against the Insured includes both covered and non-covered matters, or because a Claim is made against both the Insured and others not insured under this Policy, then…. Settlements, judgments, verdicts and awards shall be allocated between covered Loss and non-covered loss based upon the relative legal and financial exposures of, and the relative benefits obtained in connection with the resolution of the Claim as between the Insureds' or non-Insureds' exposure to non-covered loss, and the Insureds' exposure to covered Loss. In making such allocation determination, the Insureds and Underwriters agree to use their best efforts to determine a fair and proper allocation….

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

*Id.* at 37.

Providence is also covered under a Directors and Officers Excess Liability policy issued by Defendant Federal ("Federal Policy"). Dkt. #38-2 at 141, 161. This policy provides a $10 million liability limit in excess of the Beazley Policy. *Id.* at 141. The Federal Policy "follows form" to the Beazley Policy, meaning it incorporates the terms of the latter policy "except as otherwise provided" in the Federal Policy's own terms. *See id.* at 157.

**C. Procedural History**

By letter dated August 28, 2017, Providence notified Beazley and Federal that an arbitration award over $17 million had been entered against them.[2] Dkt #38-8. The letter stated that Dr. Newell's counsel had initially demanded arbitration on February 22, 2017, and that the Hearing took place from July 31 through August 4, 2017. *Id.* This was the first notification Beazley received concerning the underlying Newell Claim.

On February 23, 2018, Beazley issued a letter denying coverage for the Newell claim. Dkt. #38-6. The primary stated reason for declining coverage was that "Providence and Swedish did not promptly notify" Beazley of Dr. Newell's claim. *Id.* at 2.

This litigation was filed in King County Superior Court on March 5 and removed here on April 4, 2018. Dkt. #1. Defendants answered on April 25, 2018. Dkts. #27 and #28.

Beazley's Answer contains the following affirmative defense at issue in this Motion:

> **(Breach of Express Written Employment Agreement Exclusion).** Plaintiffs' claims against Underwriters are precluded in whole or part by Section III.G of the Beazley Policy's EPL Clause, which provides: "The Underwriters shall not be liable to make any payment for Loss in connection with or resulting from any Claim … for breach of an express written employment agreement, or under any policy or procedure providing for payment in the event of separation from employment unless such liability would have attached in the absence of such contract or

---

[2] Plaintiffs state that, including attorney fees, the total amount of the award is now $18,185,178.84. Dkt. #37 at 6.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

agreement; provided, that this Exclusion shall not apply to Defense
Costs incurred in connection with such Claim[.]"

Dkt. #28 at 11.

Federal's Answer contains the following affirmative defense: "The claims may be subject to the exclusion for breach of a written employment agreement." Dkt. #27 at 7.

### III. DISCUSSION

#### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Under Washington law, interpretation of an insurance contract is a question of law. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002). When interpreting an

insurance policy under Washington law, courts consider the policy" as a whole" and give it a "fair, reasonable and sensible construction as would be given to the contract by the average person purchasing insurance." *X2 Biosystems, Inc. v. Fed. Ins. Co.*, 656 Fed. Appx. 864, 865 (9th Cir. 2016) (quoting *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 110 P.3d 733, 737 (2005)).

### B. Analysis

Defendants base the affirmative defenses at issue on the Policy exclusion stating "[t]he Underwriters shall not be liable to make any payment for Loss in connection with or resulting from any Claim: … G. for breach of an express written employment agreement, or under any policy or procedure providing for payment in the event of separation from employment **unless such liability would have attached in the absence of such contract or agreement**; provided that this Exclusion shall not apply to Defense Costs incurred in connection with such Claim… Dkt. #39-1 at 47 (emphasis added). Under Washington law, Defendants bear the burden of showing that this exclusion applies. *Mut. of Enumclaw Ins. v. T & G Const., Inc.*, 165 Wn.2d 255, 268, 199 P.3d 376 (2008).

Plaintiffs argue that liability would attach here even in the absence of the employment Agreement. Given the nature of Judge Kallas's ruling and the record of Dr. Newell's WLAD-based complaints, the Court agrees. Judge Kallas clearly found Plaintiffs liable for violating the WLAD in addition to breaching a contract. *See id.* at 79. She awarded damages for lost earnings and emotional distress without breaking these down into damages caused by breach of contract or violation of the WLAD. The WLAD provides an independent tort remedy for both types of damages, and others.[3] Although it is true—as argued by Defendants—that the matter

---

[3] Under the WLAD, any person injured by an act in violation of the statute is entitled to recover "actual damages… together with the cost of suit including reasonable attorneys' fees," as well as other appropriate remedies. RCW

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

would likely not have gone to arbitration absent the employment Agreement, this does not mean that the entire arbitration award liability arises solely from the employment Agreement. There is no basis to say that the alleged retaliation in violation of the WLAD, an apparently equal source of the liability, would not have been found by a judge or jury outside of arbitration.[4] Given a fair, reasonable and sensible construction of the Policy language, Defendants have failed to meet their burden of showing that this exclusion applies.

Defendants contend that certain damages awarded by Judge Kallas can be allocated to the excluded contractual claims, or should have been allocated by Plaintiffs at some earlier point. Dkt. #88 at 10; Dkt #89 at 9. The Court finds that allocation is not possible now given the wording of Judge Kallas's award. However, even if the Court were to force Plaintiffs to attempt to allocate damages, Plaintiffs are correct that Washington case law precludes allocation of damages to a non-covered claim where, as here, the damages in question were recoverable both under a covered theory and an uncovered theory. Dkt. #84 at 12-13 (citing *In re Feature Realty Litig.*, 634 F. Supp. 2d 1163, 1173 (E.D. Wash. 2007) (if no "element of damage is solely attributable to the non-covered cause of action, there is no reasonable basis for allocation"); *Pub. Util. Dist. No. 1 of Klickitat Cty. v. Int'l Ins.*, 124 Wn.2d 789, 810, 881 P.2d 1020 (1994) ("the damages arising from both the noncovered claims and the covered claims are the same and cannot be separated or allocated")). The Court notes that any remaining questions about what Plaintiffs should have done in arbitration or at the outset of the dispute with Dr. Newell are intertwined with the question of actual prejudice to Defendants caused by Plaintiffs' delay in providing notice, an issue not before the Court at this time. *See* Dkt. #61.

---

49.60.030(2). The Court agrees with Plaintiffs that the WLAD provided Dr. Newell with a tort remedy for lost earnings and emotional distress. *See Clipse v. Commercial Driver Servs., Inc.*, 189 Wn. App. 776, 797, 358 P.3d 464 (2015).

[4] Defendant Federal also contends that there would have been no employment relationship absent the employment Agreement, and thus no liability under the WLAD. Dkt. #89 at 12. There is no factual basis for this assertion; it is possible for employment relationships to exist without employment agreements.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 9

## IV. CONCLUSION

Having reviewed the relevant briefing, attached declarations, and the remainder of the record, the Court hereby finds and ORDERS:

1) Plaintiffs' Motion for Partial Summary Judgment, Dkt. #84, is GRANTED as set forth above.

DATED this 19 day of February 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE